# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 13, 2011

## STATE OF TENNESSEE v. DERRICK LAMONT PARRISH

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16976      Lee Russell, Judge**

---

**No. M2010-02589-CCA-R3-CD - Filed December 7, 2011**

---

Following his guilty pleas to nine felonies, the appellant, Derrick Lamont Parrish, received a total effective sentence of sixteen and one-half years incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the length of the sentences imposed by the trial court. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

LaShawn A. Williams, Memphis, Tennessee, for the appellant, Derrick Lamont Parrish.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant was charged in counts one through six of a multi-count indictment with aggravated assault, in count seven with possession of a handgun by a felon, in count eight with possession of a schedule VI drug with intent to sell, and in count nine with possession of a schedule VI drug for delivery. Subsequently, the appellant entered a best-interest guilty

plea to all counts,[1] with the length and manner of service of the sentences to be determined by the trial court.

At the guilty plea hearing, the State said that the proof at trial would have established that on July 14, 2009, Christa Manning went to 139 Stonefield Circle to sell "an ounce of marijuana to one of the victims of the aggravated assault." The victim did not pay Manning, and she went to the appellant, who had provided her the marijuana, for assistance in collecting the $100 the victim owed. Thereafter, Manning and the appellant went to 139 Stonefield Circle. There were six individuals in the residence. After a dispute, the appellant pulled a revolver and fired two shots at the group of people; both shots hit the house. Police responded to the scene. They ultimately found the perpetrators and took Manning and the appellant into custody. Vickie Allison, who lived at 212A Cedar River Road, gave police consent to search the residence. Allison told police that the appellant asked to leave some things at her residence, including a revolver and two Crown Royal bags containing marijuana. The six-shot, .357 caliber revolver had four live rounds and two shell casings. The Crown Royal bags contained 168.4 grams of marijuana. The appellant gave a statement "essentially admitting to" firing a gun at the residence, but he contended that "he did not intend to actually hurt anyone." Regardless, the State maintained that "certainly his actions caused those individuals to fear for their safety, especially when the gun was fired." The appellant claimed one of the Stonefield residents had a gun.

At the sentencing hearing, the appellant's father, Eddie L. Parrish, a disabled Vietnam veteran, testified that the appellant was born June 19, 1977. The appellant graduated from high school and attended barber college. Mr. Parrish said that the appellant was very disciplined and had no major problems in school. Mr. Parrish maintained that he and the appellant had a close relationship.

Mr. Parrish stated that he had never been arrested, was a devout member of his church, and did volunteer work. He said that the appellant was influenced by Mr. Parrish's life and that he regularly attended church services. Mr. Parrish said that while the appellant was in jail, the youth of Mr. Parrish's church wrote letters to him. The appellant responded to the letters, admitting that he was incarcerated as a consequence of his actions and asking the youth to trust their faith.

Mr. Parrish acknowledged that the appellant had a drug problem and had been twice

---

[1] An accused who wishes to plead guilty yet assert his innocence may enter what is known as a "best interest" guilty plea. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970). A trial court may accept such a plea if the court is satisfied that there is a factual basis for the plea. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

treated for an addiction to crack cocaine. He said the treatment helped the appellant, but he relapsed because of stress. Mr. Parrish said that on May 8, 2008, the appellant learned that he had an eight-year-old daughter. He also had a fiancee who was pregnant with his son. The appellant was unable to find work because of his prior criminal history, so Mr. and Mrs. Parrish supported the appellant's children. Mr. Parrish said that around late June 2008, he noticed the appellant was depressed and frustrated because of his inability to find employment and provide for his children. Mr. Parrish believed the appellant's frustration caused him to relapse and begin using cocaine again.

Mr. Parrish said that he was shocked when he learned of the appellant's involvement in the instant offenses, maintaining that the appellant would not hurt anyone. He said that the appellant would not have used a weapon if he had not been using drugs.

He said that the appellant appeared to have learned from his mistakes during his incarceration. He opined that release into a drug treatment program would be more beneficial than further incarceration.

Mr. Parrish stated that the appellant had "his first encounter with the law" when he was about eighteen years old. He conceded that the appellant's first "weapons conviction" occurred when he was nineteen years old. Mr. Parrish acknowledged that he had been told by the appellant's drug counselor that the family was "enabling" the appellant.

The appellant's mother, Mildred Parrish, an eighth grade English teacher, testified that the appellant's family had been in counseling to learn about addiction. They also learned that they should not enable the appellant to indulge in his addiction. She said that the appellant was close to his daughter, his son, and his stepson and that he tried to stay away from drugs because of the children. She also stated that the appellant had benefitted from treatment. She opined that "punishment is not the answer [and that] rehabilitation needs to be in the form of treatment." She maintained that all of the appellant's criminal actions were drug-related.

The appellant read a statement to the court, acknowledging his addiction to drugs and alcohol. He stated that his parents gave him a wonderful upbringing but that when he was seventeen or eighteen years old, he made a poor choice and "started messing with drugs and alcohol." He said that those substances "made me stop being responsible and . . . do things I didn't want to do." The appellant stated that when he was twenty-three or twenty-four years old, he admitted himself for treatment at the Samaritan Center. He said that he began to learn about drugs, to grow up, and to become closer to Jesus.

The appellant said that after his treatment, his life went well for six months before he relapsed into using drugs and committing "petty crimes." Four or five years later, he

underwent rehabilitation at the Tony Rice Center. He said that program "was better than the first." Afterward, the appellant "stayed clean for about a year and a half . . . longer than I ever stayed clean in my life." However, the appellant stopped attending meetings and began using drugs again.

The appellant said that if he were given a third opportunity for treatment, he would "learn even more this time and be even stronger." He said that after each stint at rehabilitation, he "stayed clean longer and longer . . . [and] didn't get in trouble near as much."

The appellant said that when he committed the instant offenses, he was "not in [his] right mind" because of drugs and alcohol. He expressed remorse and said he had not intended to hurt anyone. The appellant stated that since his incarceration, he had reflected on his actions and realized his mistakes.

The appellant stated that he was concerned about the well-being of his children and that he wanted to be released so he could support his family. He said that he had "learned a lot of things about good wholesome living and that [he] need[ed] to have limits and boundaries in [his] life."

At the conclusion of the proof, the trial court found that the appellant was a standard, Range I offender. The trial court merged counts eight and nine because they were alternate theories of the same crime. The court noted that the appellant was subject to a sentence of three to six years for each Class C felony aggravated assault. See Tenn. Code Ann. § 40-35-112(3). The appellant was also subject to a sentence of one to two years for the Class E felony convictions for possession of a handgun and for possession of marijuana with the intent to sell. See Tenn. Code Ann. § 40-35-112(5).

The trial court sentenced the appellant to five years for each Class C felony conviction and to one and one-half years for each Class E felony conviction. The court further ordered that counts one and two were to be served concurrently, counts three and four were to be served concurrently, counts five and six were to be served concurrently, and counts seven and eight were to be served concurrently. The trial court then ordered that "[e]ach of those clusters of two" were to be served consecutively for a total effective sentence of sixteen and one-half years. On appeal, the appellant challenges the sentences imposed by the trial court.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo.

See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

A. Length of Sentences

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court

-5-

has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

The court found four enhancement factors: (1) that the appellant had an extensive prior criminal history, (8) that he had previously failed to comply with the conditions of a sentence involving release into the community, (10) that he had no hesitation in acting when the risk to human life was high, and (13) that the offenses were committed while the appellant was on probation. See Tenn. Code Ann. § 40-35-114(1), (8), (10), (13)(C).

The appellant maintains that the trial court erred by applying enhancement factor (1). Tenn. Code Ann. § 40-35-114(1). The appellant's presentence report reflects that since the appellant was nineteen years old, he has amassed one prior felony conviction and numerous prior misdemeanor convictions. Specifically, over a fourteen-year period, the appellant was convicted of casual exchange, nine counts of theft, three counts of possession of drug paraphernalia, driving on a revoked license, three counts of criminal impersonation, reckless aggravated assault, possession of cocaine, possession of a schedule IV drug, three counts of resisting arrest, evading arrest, reckless driving, and a weapons offense. Further, the appellant reported that he began smoking marijuana and "popping pills" when he was seventeen years old, began using powder cocaine when he was nineteen years old, and began using crack cocaine when he was twenty-three years old. The appellant said that he was using two to three grams of crack cocaine on a daily basis until he was incarcerated for the instant offenses. Accordingly, we conclude that the trial court did not err in applying this enhancement factor.

The appellant argues that the trial court erred in applying enhancement factor (10), that the appellant had no hesitation about committing a crime when the risk to human life was high, asserting that this enhancement factor is inherent in the offense of aggravated assault. Tenn. Code Ann. § 40-35-114(10). Ordinarily, an enhancement factor may be applied "[i]f appropriate for the offense and if not already an essential element of the offense." See Tenn. Code Ann. § 40-35-114. The trial court applied this enhancement factor, noting "that's not an element of this particular version of aggravated assault." However, the indictments reflect that the appellant was charged with aggravated assault by causing the victims to "reasonably fear imminent bodily injury . . . [by] use or display [of] a deadly weapon." As the State acknowledges, this court has previously stated that enhancement factor (10) "is inherent in the offense of aggravated assault [because i]t is difficult to discern a situation in which an offense committed with a deadly weapon would not necessarily entail a risk to human life." State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) (internal quotations omitted). The record does not reflect that anyone other than

the named victims was endangered by the appellant's conduct. Accordingly, we agree with the appellant that the trial court erred in applying this enhancement factor to the aggravated assault convictions.

We note that the appellant's presentence report reflects that the appellant was previously granted probation and that his probation was revoked on at least five separate occasions, justifying the application of enhancement factor (8). Tenn. Code Ann. § 40-35-114(8). Additionally, the report reflects that on January 1, 2009, the appellant was convicted of misdemeanor theft and received a suspended sentence of eleven months and twenty-nine days; on July 9, 2009, the appellant was convicted of casual exchange and again received a suspended sentence of eleven months and twenty-nine days. The appellant was on probation for both of these offenses when the instant offenses occurred on July 14, 2009. Therefore, the trial court correctly applied enhancement factor (13)(C).

The appellant complains that the trial court erred in failing to apply mitigating factor (3), that substantial grounds exist tending to excuse or justify the appellant's criminal conduct, though failing to establish a defense; mitigating factor (7), that the appellant was motivated by a desire to provide necessities for the his family or himself; mitigating factor (8), that the appellant was suffering from a mental or physical condition that significantly reduced his culpability for the offense, and mitigating factor (13), that the appellant expressed remorse and accepted responsibility for his crimes. Tenn. Code Ann. § 40-35-113(3), (7), (8) and (13).

The appellant contends that "mitigating factors (3) and (8) [are applicable] based upon the Appellant's drug addiction and mental state at the time of the commission of the offense." The trial court found that the appellant's addiction to cocaine did not justify or excuse his conduct. We agree. Further, the court noted that by statute, "the voluntary use of intoxicants does not fall within the purview of [mitigating] factor [(8)]." See Tenn. Code Ann. § 40-35-113(8). We conclude that the trial court did not err in refusing to apply mitigating factors (3) and (8) based upon the appellant's drug addiction.

Regarding mitigating factor (7), that the appellant was motivated by a desire to provide necessities for his family or himself, the appellant contends that the record reflects that he sought odd jobs at the time of the offenses and was earning approximately $100 per week by cutting hair. Tenn. Code Ann. § 40-35-113(7). He maintains that his guilty plea to possessing drugs for resale and Mr. Parrish's testimony that the appellant was frustrated by his inability to get a job to support his family established his motivation to support his family. However, the record belies the appellant's contention. The appellant's father testified that he believed the appellant's frustration in failing to obtain employment led the appellant to relapse and start using drugs again. Mr. Parrish at no time testified that the appellant was

selling drugs to support his family. The court found that there was no proof in the record that the appellant committed the assaults or sold drugs "to provide necessities for his children." We conclude that the trial court did not err in finding that this mitigating factor was not applicable.

The appellant maintains that the trial court should have applied mitigating factor (13), the "catch all factor," because the appellant was remorseful and accepted responsibility for his actions. Tenn. Code Ann. § 40-35-113(13). This court has previously stated that genuine remorse may be entitled to consideration under mitigating factor (13). See State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). In the instant case, the trial court made no explicit finding regarding the appellant's remorse. Regardless, given the strength of the three enhancement factors that were correctly applied, we conclude the trial court did not err in sentencing the appellant to five years for each Class C felony conviction and to one and one-half years for each Class E felony conviction.

## B. Consecutive Sentencing

Finally, the appellant argues that trial counsel erred in imposing consecutive sentencing. Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995).

In the instant case, the trial court found that the appellant was an offender whose record of criminal activity is extensive, that the appellant is a dangerous offender, and that the offenses were committed while on probation. See Tenn. Code Ann. § 40-35-115(2), (4), and (6). The appellant complains that the record does not support the trial court's finding that his record of criminal activity is extensive. We disagree. The record demonstrates that the appellant has a fourteen-year history of criminal activity, which includes one felony and numerous misdemeanor convictions. Tenn. Code Ann. § 40-35-115(2). Additionally, there is proof in the record that the appellant was on probation for theft offenses when the instant offense was committed. Tenn. Code Ann. § 40-35-115(6). We conclude that the record supports the imposition of consecutive sentencing.

In order to find that a defendant is a dangerous offender, a court must also find that (1) the sentences are necessary in order to protect the public from further misconduct by the defendant and that (2) the terms are reasonably related to the severity of the offenses. Wilkerson, 905 S.W.2d at 938; see also State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). In the instant case, the trial court found that the appellant had an extensive history of violating the law and that "[t]he shooting incident suggests that he just . . . isn't concerning himself

with the safety of folks whose lives he's putting in danger." The court also found that ordering all of the sentences to be served consecutively would be excessive, thereby supporting a finding that the terms it imposed were reasonably related to the severity of the offenses. Accordingly, the appellant is not entitled to relief on this basis.

Finally, the appellant argues that the trial court should not have imposed consecutive sentencing for his aggravated assault convictions because the offenses were committed within a twenty-four hour time period. In support of this contention, the appellant quotes the language of Tennessee Code Annotated section 40-35-106(b)(4), which provides that "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." However, this provision is used to determine a defendant's offender classification. See State v. Lawrence Hailey, No. W2009-00759-CCA-R3-CD, 2010 WL 2219574, at *11 (Tenn. Crim. App. at Jackson, May 24, 2010). Further, our courts have specifically held that "the single criminal episode concept . . . is irrelevant to a determination of whether to impose consecutive sentencing." Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976); see also State v. Darius Jones, No. W2010-01080-CCA-R3-CD, 2011 WL 2162986, at *4 (Tenn. Crim. App. at Jackson, May 26, 2011), perm. to appeal denied, (Tenn. 2011).

### III. Conclusion

In sum, we conclude that the trial court did not err in sentencing the appellant. The judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE